IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| GERALDEAN F. WARD, | } |
| Plaintiff, | } |
| v. | } Case. No.: 5:06-CV-1637-JHH |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff, Geraldean F. Ward, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

I.   **Proceedings Below**

Plaintiff filed her application for DIB protectively on December 11, 2002, alleging a disability onset date of July 2, 2002. (R. 44-47). Plaintiff had acquired sufficient quarters of coverage to remain insured through September 30, 2003. (R. 25, 48, 61).

On April 21, 2003, Plaintiff's application was denied initially. (R. 30-36). On May 15, 2003, Plaintiff timely filed a request for a hearing, (R. 37), which was held before an Administrative Law Judge ("ALJ") on November 24, 2005, in Decatur, Alabama, (R. 411-54). Both Plaintiff and Vocational Expert ("VE") Patsy Bramlett testified at the hearing. (R. 405-54).

In the April 4, 2005 decision, the ALJ determined that Plaintiff was not eligible for DIB because she was not under a "disability," as defined by the Act, at any time from July 2, 2002, her alleged onset date, through September 30, 2003, the date she was last insured. (R. 25-26). Thereafter, Plaintiff requested review of the ALJ decision by the Appeals Council and submitted additional evidence that was incorporated into the record on review. (R. 11-12). After the Appeals Council denied Plaintiff's request for review on June 19, 2006, (R. 7-10), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was fifty-one years old and had a high school equivalent education. (R. 26, 44, 53). She has past relevant work experience as a bus driver, a billing clerk/parts pick-up driver, a secretary, and a shuttle driver. (R. 53, 58, 66-71). According to Plaintiff, she has been unable to engage in substantial gainful activity since July 2, 2002, when she became unable to work due to obstructive sleep apnea, narcolepsy, degenerative disc disease, gastroesophageal reflux disease, obesity, and depression. (R. 52).

At the hearing, Plaintiff rated her low back pain as a "7+" (on a scale of 0 to 10), her leg pain as a "7," her upper back pain as a "7," her shoulder pain as a "7," and her hand and foot pain as a "7." (R. 423, 427-29). She also stated that she experiences numbness and tingling in her neck and shoulders, back spasms, and swelling and tenderness in her extremities due to arthritis. (R. 423-25, 430). According to Plaintiff, her back and leg pain affect her balance, ability to bend over, and ability to pick up her grandchildren, while arthritis affects her grip. (R. 424). She cannot stand, sit or walk for long periods of time, and she is limited in what she can lift or carry. (R. 438-39).

Plaintiff also testified that although she sleeps eight hours a night, it is "broken up" by pain relating to her back, left leg, and feet. (R. 419). She is "always tired;" however, she does not nap

during the day. (R. 435, 420). Plaintiff claims that her appetite is affected by depression and, to a lesser extent, gastric reflux. (R. 419-420). She lost over 100 pounds after undergoing gastric bypass surgery. (R. 433-34). Plaintiff also described her depression, which is caused by guilt for her inactivity and which results in crying episodes approximately four times a day. (R. 444).

## II.    ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982)

(other citations omitted). Once a claimant shows that she can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff last met the insured status requirements of the Act on September 30, 2003. (R. 25, No. 1). Plaintiff did not engage in substantial gainful activity during the period of time from her alleged onset of disability on July 2, 2002, through her date last insured. (R. 25, No. 2). The ALJ found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which he deemed to be "severe:" degenerative disc disease, severe osteoporosis of the spine secondary to compression fractures, obstructive sleep apnea on C-Pap therapy, a history of narcolepsy spectrum syndrome disorder, idiopathic hypersomnia, pain of the neck, pain of the back, pain of the lower extremities, hyperthyroidism, morbid obesity, deviated nasoseptum, benign lesion of the vocal cord (status-post excision), hypokalemia, and complaints of sleep disturbance. Nevertheless, he determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 21, 25, Nos. 3, 4). The ALJ also found that Plaintiff's mental impairment did not rise to the level of "severe." (R. 21). According to the ALJ, Plaintiff's subjective complaints concerning her alleged impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (R. 25, No. 5).

Moreover, the ALJ found that prior to the expiration of her insured status, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, with certain limitations including a sit/stand option and no walking, prolonged standing, climbing, stooping, kneeling,

crouching, crawling, exposure to moving machinery, temperature extremes, vibrations, or operation of a vehicle on public roads. (R. 25, No. 7). With the help of testimony from the VE, the ALJ found that Plaintiff could return to her past relevant work as a billing clerk and a secretary. (R. 26, Nos. 8, 9). Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined by the Act, at any time through her date of last insured on September 30, 2003. (R. 26, No. 10).

## III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 9, at 11). Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ improperly applied the three-part pain standard and thus erroneously rejected Plaintiff's complaints of pain; and (2) the ALJ failed to give proper weight to the opinion of Plaintiff's treating physician Dr. Rodney Harney. (Doc. # 9, at 1-2). In support of her argument, Plaintiff relies not only on the evidence before the ALJ at the time of the decision, but also on additional medical records submitted to the Appeals Council after the ALJ rendered his decision. (Doc. # 9, at 3).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by

"substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ properly discounted Plaintiff's subjective complaints and appropriately weighted the opinion of Plaintiff's treating physician Dr. Harney when he found that Plaintiff was not under a "disability" at any time prior to the expiration of her insured status. Before delving into Plaintiff's arguments, however, the court will address the threshold matter of Plaintiff's inappropriate reliance on evidence submitted to the Appeals Council after the ALJ's decision.

### A. Relevance of New Evidence Submitted to Appeals Council

The Eleventh Circuit has made clear that when weighing whether substantial evidence supports the ALJ's decision, this court must exclude from consideration any information submitted to the Appeals Council after the ALJ's decision, because it is not relevant to that inquiry. "[T]his will be our rule: when the [Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Although Plaintiff presented a significant lot of evidence to the Appeals Council after the ALJ's decision in this case,[1] the Appeals Council nevertheless denied review. Thus, it is inappropriate for Plaintiff to suggest now to this court that the ALJ's decision would have - or should have - been different with knowledge of that additional evidence. (*See, e.g.,* Doc. # 9, at 9-10) ("The ALJ did not have the benefit of additional information submitted to the Appeals Council when he issued his unfavorable decision."). Because the ALJ did not have that information to review, this court cannot review it either when determining whether his disability determination should be upheld.

Although it is inappropriate for this court to consider evidence submitted anew to the Appeals Council when conducting the substantial evidence analysis, the Eleventh Circuit has set forth two other circumstances in which this court can, and should, take account of the newly submitted

---

[1] That evidence included medication records, Decatur Diagnostic Laboratories reports, records from the Rheumatology and Arthritis Clinic dated June 9, 2005, medical records from Dr. Harney dated April 25, 2005 and several different days in June and July 2005, a medical assessment of ability and clinical assessment of pain from Dr. Mark Murphy dated May 4, 2005, medical records from Decatur General Hospital Sleep Disorder Center dated June 14, 2005 and December 14, 2004, medical records from Parkway Medical Center dated April 6, 2004, a letter from Dr. Harney dated December 14, 2004, and a medical assessment of ability and clinical assessment of pain from Dr. Harney dated January 3, 2005. (R. 320-410).

7

evidence: (1) for purposes of remand under 42 U.S.C. § 405, sentence six; or (2) if the Appeals Council refuses to consider "new and material" evidence and such refusal amounts to an error of law. *Falge*,150 F.3d at 1323-24. Neither situation is applicable here.

First, this court has the power pursuant to § 405(g) to remand a case to the Social Security Administration to permit the SSA to consider that newly submitted evidence *if, and only if*, the plaintiff has shown "that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge*, 150 F.3d at 1323 (citing *Cannon v. Bowen*, 858 F.2d 1541 (11th Cir.1988)). Thus, if a plaintiff "can show good cause for his failure to introduce evidence during a hearing before the ALJ (even if the evidence was available to the applicant before the ALJ's decision), courts may consider that evidence in deciding whether the case should be remanded for further administrative proceedings to include the new evidence." *Falge*, 150 F.3d at 1323-24.

But that is simply not the case here. Just as in *Falge*, Plaintiff "has provided no reason – no good cause – why [numerous] report[s] w[ere] not made available during proceedings before the ALJ." *Falge*, 150 F.3d at 1323. Indeed, Plaintiff never even mentions the statutory requirements for remand under sentence six of 42 U.S.C. § 405(g), much less demonstrates how the evidence she submitted warrants remand.[2]

---

[2] Even if Plaintiff had raised the issue of remand, that relief is not available to her here because the evidence submitted to the Appeals Council does not meet the § 405(g) requirements. Most, if not all, of the additional evidence is dated after Plaintiff's insured status expired and therefore is irrelevant to the disability analysis. *See Anderson v. Schweiker*, 651 F.2d 306, 310 n. 3 (5th Cir. 1981). With respect to the few medical records that were dated during the relevant time period, they are merely duplicates of what had already been provided to the ALJ prior to his decision. (R. 399-406).

8

A second circumstance exists in which this court must examine evidence submitted to the Appeals Council after the ALJ decision: "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision [the denial of review] is . . . subject to judicial review because it amounts to an error of law." *Falge*, 150 F.3d at 1324 (internal quotations omitted). In that situation, this court's review of the Appeals Council's denial of review of the ALJ decision must include an examination of the newly submitted evidence "to determine if the evidence is new and material, the kind of evidence the [Appeals Council] must consider in making its decision whether to review an ALJ's decision." *Falge*, 150 F.3d at 1324 (citing 20 C.F.R. § 404.970(b) ("Appeals Council shall evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the administrative law judge hearing decision."); 20 C.F.R. § 416.1470(b) (same)).

Again, however, that is not this case. "[T]he record seems to show affirmatively that the [Appeals Council] did consider this evidence when it denied review." *Falge*, 150 F.3d at 1324 n.9. Any suggestion that the Appeals Council refused to consider the mass of evidence Plaintiff submitted to them is not consistent with the record, which affirmatively shows that it made all of the additional

---

In any event, that evidence would not have reasonably resulted in a change in the decision. *Wilson v. Apfel*, 179 F.3d. 1276, 1278 (11th Cir. 1999). Over half of the new evidence was rendered after the date of the ALJ's decision and does not relate to the period of covered quarters considered by the ALJ. To be material, the evidence must relate to the period prior to the ALJ's decision. *Wilson*, 179 F.3d. at 1278 (reasoning that a doctor's examination conducted after the ALJ's decision was not probative of any issue in the case). Thus, the Appeals Council appropriately determined that these opinions, when considered in conjunction with the evidence that was before the ALJ, provided no basis for changing the ALJ's decision. (R. 7). Accordingly, even if Plaintiff had properly preserved an argument under sentence six of § 405(g), which she has not, the additional evidence is not "material" and fails to satisfy the criteria for remand.

evidence part of the record and denied Plaintiff's request for review after considering "the reasons you disagree with the decision and the additional evidence listed." (R. 7-10).

In light of Plaintiff's failure to show that this court can and should consider the newly submitted evidence, the issue is not whether the Appeals Council "correctly determined if the evidence was new and material, [] but instead whether the ALJ's decision is supported by substantial evidence." *Falge*, 150 F.3d at 1324 (internal footnote omitted). Accordingly the court will set aside, as it must, the new evidence submitted to the Appeals Council when conducting the substantial evidence review. As outlined below, based upon the record before the ALJ at the time of his decision, the court finds that Plaintiff's arguments regarding the ALJ's application of the pain standard and weighting of her treating physician's opinion fail to warrant reversal.

**B.     Evaluation of Plaintiff's Subjective Complaints Under the Pain Standard**

Plaintiff contends that when determining her ability to work, the ALJ failed to appropriately evaluate her alleged pain and subjective symptoms in light of the "pain standard." (Doc. # 9, at 8-11). It is axiomatic that the Act and its related regulations provide that a claimant's statements about pain or other symptoms *will not alone* establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined

medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the court finds that the ALJ's analysis comports with the requirements of the Eleventh Circuit's "pain standard" for evaluating Plaintiff's subjective complaints. Here, the ALJ cited 20 C.F.R. § 404.1529 and considered Plaintiff's symptoms and subjective complaints in light of the standards outlined therein. (R. 21-22). The ALJ determined that although Plaintiff does have underlying medical conditions related to her pain allegations, her statements concerning the pain

Case 5:06-cv-01637-JHH   Document 12   Filed 09/12/08   Page 12 of 18

caused by those conditions and its impact on her ability to work are not entirely credible. (R. 21-22). In so finding, the ALJ generally observed the "vague and unpersuasive" nature of Plaintiff's complaints. (R. 22). Although he admitted it was "feasible [that Plaintiff] may have experienced increasing discomfort related to her diagnosed conditions," he found that "the record fails to establish the degree of pain and functional limitations alleged during any relevant period." (R. 22). The ALJ also noted Plaintiff's intermittent and conservative treatment for her conditions, which required no hospitalization except for a brief stay in July 2002 that resolved her ailments with conservative treatment. (R. 22-23).

More specifically, the ALJ conducted a thorough review of the medical evidence of record and determined that Plaintiff's subjective complaints were not consistent with the objective evidence relating to the time period prior to her date of last insured. First, as to Plaintiff's sleep disorders, the record indicates that her conditions are well controlled with medication and other therapies. Although Plaintiff was diagnosed with sleep apnea, idiopathic hypersomnia, and narcolepsy spectrum disorder in February 2000, she reported significant improvement in her fatigue and daytime sleepiness after a month of mediation and nightly C-Pap therapy. (R. 18). Despite the November 2002 opinion of one of her physicians, Dr. Rodney Harney, that she should not return to her commercial driving job because of her sleep apnea and narcolepsy, comprehensive progress notes from another physician, Dr. Edward Turpin, which cover through December 2004, indicate that her sleep conditions were responding "very well" to Ritalin and C-Pap therapy. (R.18). At the hearing, Plaintiff admitted that her obstructive sleep apnea and narcolepsy are adequately controlled with prescription medicine and nightly utilization of a C-Pap machine. (R. 20).

The only hospitalization in the medical record for any of Plaintiff's conditions occurred in July 2002 for weakness, dizziness, and swelling. However, it was a brief stay due to her quick response to hydration and potassium supplementation, which apparently resolved her conditions. (R. 18, 22-23, 229-38). Indeed, by mid-2003, Dr. Zaria Murrell concluded that Plaintiff's overall physical condition had improved to the point of being fit to undergo major gastric bypass surgery, and she endured the surgery in July 2003 with no complications. (R. 18). Although Plaintiff's 277-pound body weight in July 2003 does indicate that she was morbidly obese, the ALJ correctly noted that "there is no evidence that the claimant's massive body weight significantly contributed to any disabling muscoskeletal condition prior to the expiration of her insured status." (R. 20). And, as of February 2004, Plaintiff reported a loss of 41 pounds due to the surgery. (R. 19)

Plaintiff's diagnosis of degenerative disc disease in 1998 by Dr. Randall Riehl also has resulted in only intermittent and conservative treatment and seems to be well controlled on an anti-inflammatory agent utilized on an as-needed basis. The record indicates that after her diagnosis, Plaintiff went almost two years without any treatment for her back pain until March 2002, when she returned to Dr. Riehl complaining of lower back pain. (R. 19, 121-23). An anti-inflammatory medication was prescribed, and she was advised to begin a course of physical therapy. When she returned later that month for a follow-up, she was about 40 percent better. (R. 19, 121). In December 2003, Dr. Mitchell Schuster requested bone density testing that revealed osteoporosis, and in April 2004, Dr. Harney ordered a thoracic scan and lumbar MRI that confirmed her degenerative disc disease.[3]

---

[3] Although these tests were conducted after the expiration of Plaintiff's disability insured status, the ALJ appropriately considered them because they "represent progressive pathology [that] was understandably present before the claimant's insurability for disability benefits ended." (R. 19).

As the ALJ noted, although Plaintiff's back disorder appears to be her "most limiting impairment, there is no evidence of emergency room visits or hospitalizations." (R. 23). Plaintiff submitted no evidence to indicate that she followed through with Dr. Riehl's recommendation of physical therapy, and there is no evidence that she sought help from a pain management clinic or that any of her doctors recommended surgical intervention. Moreover, the ALJ personally observed that Plaintiff "had no difficulty ambulating into the hearing room without an assistive device, and she sat through the proceedings in no obvious pain or discomfort." (R. 23). The ALJ opined that "[s]he simply lacked the physical appearance of a person who might be suffering a progressive condition or a history of prolonged or severe pain or discomfort." (R. 23). It would not be appropriate for this court to reevaluate the evidence or substitute its judgment for that of the ALJ. There is ample evidence to support the ALJ's conclusion that Plaintiff "does not experience pain, discomfort, or other symptoms of the severity, frequency, or duration necessary to preclude the performance of any and all work activity." (R. 23). *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (reasoning that ALJ properly doubted claimant's allegations of disabling pain where there were "no clinical findings indicative of a back impairment of the degree of severity described by [the claimant]").

Further support for the ALJ's decision to discount Plaintiff's subjective complaints is found in the lack of evidence suggesting that Plaintiff's daily functioning is significantly deficient. (R. 24). Although Plaintiff apparently was reluctant to discuss her daily life activities with the ALJ at the hearing (R. 24), she did testify that she performs various household chores and shops occasionally with assistance from her daughter. (R. 24). The ALJ observed that Plaintiff was neat and appropriately dressed at the hearing, and that she appeared capable of general adaptive activities

including taking care of her personal needs, albeit with alleged difficulty. (R. 24). Moreover, in January 2003, after her alleged disability onset but before the expiration of her covered quarters, Plaintiff reported that she was able to watch television, listen to music, read, do the laundry, make her bed, wash dishes, and shop approximately once a week. (R. 24, 75-79).

While it is clear in this Circuit that "participation in everyday activities of short duration" does not mean that a claimant is not disabled, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), such activities are relevant to the matter of Plaintiff's credibility. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005) (finding that ALJ properly considered claimant's daily activities, frequency of symptoms, medications, and found subjective complaints were inconsistent with plaintiff's medical record). Indeed, the Eleventh Circuit has affirmed adverse credibility findings based on evidence of ability to perform daily activities such as those present in this case. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)(affirming adverse credibility finding in light of claimant's ability to drive, provide childcare, bathe, care for herself, and perform housework); *Graham v. Apfel*, 129 F.3d 1420, 1421-22 (11th Cir. 1997)(reasoning that activities such as child care, attending school, and performing household chores supported ALJ's conclusion that Plaintiff could perform light work). Thus, evidence indicating that Plaintiff is not totally incapacitated with respect to her daily functioning, especially when considered in combination with the objective medical evidence of record, supports the ALJ's finding that Plaintiff's subjective complaints are not entirely credible. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989)(finding that where, as here, the ALJ specifically articulates at least three reasons for rejecting the claimant's subjective complaints of pain, the ALJ properly discredited

Plaintiff's testimony). For all of these reasons, the ALJ's decision to discount Plaintiff's subjective complaints is supported by substantial evidence.

### B. Weight Accorded to the Opinion of Dr. Harney

Plaintiff also contends that the ALJ improperly discounted the opinion of her treating physician, Dr. Rodney Harney, when reaching his disability conclusion. To the contrary, the court finds that the ALJ applied proper legal standards when weighting the evidence submitted by Dr. Harney, and his conclusions are supported by substantial evidence. Again, however, the court's analysis required a cautious sifting through the spate of evidence presented by Plaintiff to ensure that the court considered only those opinions and records from Dr. Harney that were before the ALJ at the time of his decision.[4]

The weight properly afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon a number of factors, including the source's examining and treating relationship with the claimant, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source. *See* 20 C.F.R. § 416.927(d). The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although

---

[4] Plaintiff's brief to this court adopts an "all but the kitchen sink" approach to presenting evidence of her disability - leaving it up to the court to pinpoint what evidence appropriately may be considered in the substantial evidence analysis. For example, Plaintiff argues that ALJ failed to take into account Dr. Harney's repeated opinion that she was unable to work - which he stated initially on December 19, 2002 and repeated again on December 17, 2004 and January 3, 2005. (Doc. # 9, at 6). However, only one of those opinions - the December 19, 2002 letter - was before the ALJ at the time of his decision, while the other two letters were first presented to the Appeals Council. (Doc. # 9, at 6). It is clear that because the ALJ did not consider opinions expressed in the latter two letters from Dr. Harney (because they were not before him), neither can this court. That evidence can offer no support for Plaintiff's arguments here.

16

a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440.

The ALJ's decision indicates that he gave substantial consideration to all of Dr. Harney's treatment notes and opinions about Plaintiff's condition, with one exception. Although Dr. Harney opined by letter dated December 19, 2002, that Plaintiff's "many maladies . . . has [sic] resulted in her inability to be gainfully employed," (R. 157),[5] the ALJ rejected those "rather ambiguous statements concerning the claimant's disability." (R. 23). The ALJ's reasons for discounting that conclusory opinion are well-articulated and sound: Dr. Harney's own treatment notes reveal that his clinical examinations were essentially unremarkable with no evidence of a major impairment that could reasonably be expected to result in the alleged symptomology. (R. 18-19, 23, 121-41, 169-96, 229-42, 257-67, 297-305). In any event, it was entirely appropriate for the ALJ to give less than controlling weight to Dr. Harney's opinion on the ultimate issue of disability. It is well-settled that although an ALJ can consider opinions from acceptable medical sources on such issues as a

---

[5] As noted earlier, Dr. Harney repeated that same statement in letters dated December 17, 2004 and January 3, 2005, which were submitted to the Appeals Council and are not relevant to this court's substantial evidence analysis.

claimant's RFC and whether a claimant is disabled, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996). Thus, the court finds that the ALJ's treatment of Dr. Harney's medical opinions was appropriate, guided by proper legal standards, and supported by substantial evidence.

VI. Conclusion

For all of these reasons, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

DONE and ORDERED this 12th day of September, 2008.

JAMES H. HANCOCK
UNITED STATES DISTRICT JUDGE